On June 7, 1979, a complaint was filed by Fannie Mae Benjamin, Patricia Ann Thomas and Cornell Benjamin against other tenants in common seeking a sale for division of the Northwest one-quarter (NW 1/4) of Section 22, Township 3 North, Range 3 East, situated in Baldwin County. Several tenants in common had varying percentages of ownership in the land. The plaintiffs each own approximately 3/110 of the property, while one of the defendants, Willie Sheffield, owns approximately 83 percent of the property.
On June 25, 1979, several defendants filed a general answer alleging that the subject land could be equitably divided. On July 23, 1979, certain defendants filed a motion to dismiss and also filed a request to purchase the plaintiffs' interest in the property pursuant to Code 1975, § 35-6-100 (effective date July 17, 1979). This request was denied by virtue of the trial court's final decree, although no specific mention of it was made.
On August 14, 1979, the plaintiffs filed an amended complaint and on September 6, 1979, certain defendants filed an answer and as their first affirmative defense alleged that the statute on which the action was based, Code 1975, § 35-6-20, was unconstitutional. This argument was again raised at trial and rejected by the trial court. On June 4, 1980, the matter was called for trial and the court, after denying all of the plaintiffs' motions, received testimony. On June 17, 1980, the trial court issued its decree finding that the land could not be equitably divided and ordering a sale for division.
There are three issues presented on appeal:
(1) Whether Code 1975, § 35-6-100, is applicable to the facts of this case inasmuch as the action was filed prior to the effective date of the statute;
(2) Whether the trial court denied the appellant-defendants due process and equal protection of the law by ordering a forced sale of the property pursuant to Code 1975, § 35-6-20;
(3) Whether the trial court, which heard the case ore tenus, should be reversed unless its judgment is clearly erroneous or unsupported by the evidence.
In considering the applicability of § 35-6-100, we note that the present action was filed prior to the effective date of that statute and that there is no provision for the retrospective application of § 35-6-100 within that statute.
The general rule is that retrospective application of a statute is not favored and legislative intent to make a statute retrospective must be clearly expressed before the statute will be construed to operate retrospectively. City of Brewton v.White's Auto Store, Inc., 362 So.2d 226 (Ala. 1978).
Since the legislature did not manifest an intent to have §35-6-100 operate retrospectively, the essential question is whether a retrospective application of § 35-6-100 is required under the facts of this case.
As already stated, the complaint in the instant case was filed on June 7, 1979. The trial of the matter, however, was not had until June 4, 1980, and the trial court's decree was not issued until June 17, 1980. The effective date of §35-6-100 was July 17, 1979.
The problem presented in the instant case is that some of the pleadings had been filed prior to the effective date of the statute, but the case remained pending for nearly eleven months subsequent to the effective date of § 35-6-100. *Page 95 
It is clear that if a statute is procedural in nature, it may be applied on appeal even if the effective date of that statute occurred while the appeal was pending, and even if the effective date of the statute was after the judgment in the trial court. Smith v. Colpack, 235 Ala. 513, 179 So. 520
(1938). It is equally clear that if a statute is substantive in nature and its effective date occurs after the judgment of the trial court, it may not be applied on appeal. Smith v. Colpack;Jenkins v. Raulston, 214 Ala. 443, 108 So. 47 (1926).
We have been unable to find any case which addresses the precise question here, the effect of a statute which has an effective date subsequent to the filing of a complaint in the action in which its application is sought, but prior to the trial of and final adjudication of the issues. This Court's decision in Brown v. Bateh, 362 So.2d 841 (Ala. 1978), however, provides a useful analogy.
In Brown, there was a question raised concerning the applicability of a statute which reduced the redemptive period after a foreclosure on a mortgage from two years to one. The statute became effective after the execution of the mortgage, but prior to the foreclosure. The Court noted that the statute stated that the one-year period began to run from the date ofsale. Thus, the date which was important in the determination of the applicability of the statute was the date of the foreclosure sale. Since that date was after the effective date of the statute, the statute was held to require no retrospective application and was applicable to that case.
Section 35-6-100 states:
 Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing for the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not. [Emphasis supplied.]
Thus, under § 35-6-100, the date which is important in determining whether the statute requires an impermissible retrospective application or whether it is applicable prospectively is the "date set for trial." If § 35-6-100 was effective prior to the date set for trial and if the defendants' request was made "not later than 10 days prior to the date set for trial," § 35-6-100 should have been applied.
We are unable to determine from the record when the trial was originally set, although it is clear that trial was not actually held until June 4, 1980. We do note from the record that the publication of notice of the pending action gave the defendants until August 6, 1979, to respond to the complaint before a default could be taken. August 6, 1979, appears to be the earliest possible date of trial and § 35-6-100 was clearly effective ten days prior to that date.
The defendants' request to purchase the property was filed on July 23, 1979. This, too, was ten days prior to August 6, 1979. Therefore, the defendants' request complied with the time requirements of § 35-6-100.
Since the effective date of § 35-6-100 was at least ten days prior to the earliest possible date on which trial could have been set and since the defendants' request was filed at least ten days prior to that date, § 35-6-100 would be applicable in the present case. Therefore, the trial court erred in not applying § 35-6-100 and the judgment of the trial court in that regard is due to be reversed.
Appellants also contend that the application of § 35-6-20
denies them due process and equal protection of the law. We cannot agree, since the proceedings under § 35-6-20 require a judicial determination that the land cannot be equitably divided before there can be an order requiring a sale for division. This procedure clearly *Page 96 
provides for all parties to have their "day in court." Likewise, although § 35-6-20, prior to the addition of the procedure in § 35-6-100, appears to operate in a manner which would cause the unfortunate occurrence of the passing of title to a stranger, Ragland v. Walker, 387 So.2d 184 (Ala. 1980), there appears to be no unequal application of that statute to any one particular class.
In Ragland, this Court hypothesized a classic example involving an estate and several joint owners, and discussed the operative effect of § 35-6-20 and § 35-6-100 when applied to that hypothetical situation. In this opinion, we will expand our discussion of the operative effect of § 35-6-100
especially, and we do this because we have been asked increasingly by parties, in partition cases which have been appealed, and by petitioners who seek supervisory writs in partition cases, to determine the constitutionality and operative effect of our current law in this field.
To facilitate our discussion of the procedure for partition or sale under current law, we use again another hypothetical fact situation.
A, B, C and D are joint owners or tenants in common (each owning an undivided 1/4 interest), of a tract of land containing 160 acres. A, proceeding under § 35-6-20, files a petition in which he avers that the 160 acres cannot be partitioned and agrees that it should be sold for division. C, in his answer to the petition, states that the land can be equitably partitioned, but he also notifies the court, not later than ten days prior to the date set for trial of the case, that he wants to purchase the interest of A, the petitioner, and that of B, who agrees to the sale. D files an answer in which he denies that the 160 acres cannot be equitably divided.
Under these hypothetical facts, A could obtain a partition of the land between him and B, C and D, as a matter of right, but A's alternative right to have the land sold for division is statutory, and would be conditioned upon A's averment and proof that the property could not be equitably divided or partitioned among them. Raper v. Belk, 276 Ala. 370, 162 So.2d 465 (1964).
C, provided he notified the court as required by § 35-6-100, could purchase A's interest, because A was the petitioner; C also could purchase B's interest, because B agreed to the sale asked for by A. The fact that C asked to be allowed to purchase the interests of A and B would not waive C's right to insist on partition. Ragland v. Walker, supra.
If the trial court determined that the land could not be equitably partitioned, then the court, giving effect to C's request to purchase under § 35-6-100, would follow the procedure provided for in § 35-6-101, § 35-6-102, and §35-6-103:
§ 35-6-101. Appointment of appraisers; report.
 In such circumstances as described in section § 35-6-100, and in the event the parties cannot reach agreement as to the price, the value of the interest or interests to be sold shall be determined by one or more competent real estate appraisers or commissioners, as the court shall approve, appointed for such purpose by the court. The appraisers or commissioners appointed under this section shall make their report in writing to the court within 30 days after their appointment. (Acts 1979, No. 79-334, p. 532, § 2.)
 § 35-6-102. Payment of appraised value into court; time period; transfer of title.
 After the report of the appraisers or commissioners, the tenants in common or joint owners seeking to purchase the interests of those filing the petition shall have 30 days to pay into the court the price set as the value of those interests to be purchased. Upon such payment and approval of same by the court, the clerk shall execute and deliver or cause to be executed and delivered the proper instruments transferring title to the purchasers. (Acts 1979, No. 79-334, p. 532, § 3.)
 § 35-6-103. Effect of failure to pay purchase price.
 Should the joint owners or tenants in common fail to pay the purchase price as provided in section 35-6-102, the court *Page 97 
shall proceed according to its traditional practices in such cases as described in section 35-6-100. (Acts 1979, No. 79-334, p. 532, § 4.)
Because the value of a fractional interest in a larger tract, if sold separately, may be of lesser value than if the entire tract was sold, we determine that the words "the value of the interest or interests to be sold" in § 35-6-101 would be determined as follows: The appraisal would be of the entire tract, and the value of the interest to be sold would be determined proportionately, based upon the fractional ratio the interest to be sold bears to the property as a whole. For example, in the hypothetical, if C could not agree with A and B on the price of the interests of A and B, the appraisal would be of the entire tract. A's undivided one-fourth interest would be one-fourth of that total value. B's undivided one-fourth interest would be one-fourth of that total value. Assuming C paid A and B for their respective interests as provided by §35-6-101, then C would own three-fourths of the interest in the tract, and D would own one-fourth. If either C or D, or their successors in interest, subsequently desired to file a partition proceeding, their rights would not be barred under principles of res judicata by reason of the adjudication made in the pending partition proceeding.
We find that the trial court here followed substantially the procedure we have outlined herein; therefore, we find no merit in the contention by the appellants that they were denied due process and equal protection of the law.
Because we reverse the judgment on other grounds, we do not discuss the issue of whether the judgment was supported by the evidence.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.