## HOOKER *v.* BURR.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 263.   Submitted April 26, 1904.—Decided May 16, 1904.

A party insisting upon the invalidity of a statute as violating any constitutional provision must show that he may be injured by the unconstitutional law before the courts will listen to his complaint.

An independent purchaser at a foreclosure sale, who has no other connection with the mortgage, cannot question the validity of legislation existing at the time of his purchase on the ground that it impaired a contract, even though the law complained of was passed after the execution of the mortgage which was foreclosed. *Insurance Co.* v. *Cushman,* 108 U. S. 51, followed, and *Barnitz* v. *Beverly,* 163 U. S. 118, distinguished.

Whether the requirements of a statute affecting foreclosure sales and redemption, and which does not conflict with the Federal Constitution have been complied with, is not a Federal question.

. THE plaintiff in error commenced this action in the proper state court to procure a decree cancelling a deed of the premises mentioned in the complaint, executed by the defendant Hammel to the defendant Rhodes, and also directing that a deed should be executed to the plaintiff by defendant Hammel

or Burr, or both, conveying the same property to the plaintiff, which had been purchased by him under the sale in foreclosure hereinafter mentioned. Defendant Burr was sheriff at the time of that sale, and conducted the same and executed the certificate of sale June 13, 1898. His term of office expired in January, 1899, and defendant Hammel became his successor, and as such executed the deed to defendant Rhodes, which plaintiff in error asks to have set aside. The two defendants, Burr and Hammel, were made parties herein because it was not certain which one of them should be decreed to execute the deed to plaintiff which he asks for in this suit.

The defendants by their answer denied many of the material allegations of the complaint, and the case went to trial before the court, and a judgment having been entered dismissing the complaint on the merits, an appeal was taken to the Supreme Court of California, which affirmed the judgment, 137 California, 663, and the plaintiff has brought the case here. The material facts are as follows:

On October 16, 1893, Anna P. and Ambrose H. Spencer, then being the owners of the property, mortgaged the same to one Jacob Swiggart, to secure the payment of a promissory note of the same date for $5,000. This note and mortgage were subsequently assigned by Swiggart to Charles H. Bishop, who afterwards commenced a suit upon the note and mortgage to recover the amount due on the former and to foreclose the mortgage. On May 14, 1898, a judgment was entered in the case, whereby it was adjudged that there was due to the plaintiff upon the note the sum of $6,782.49, and that the same was a lien upon the mortgaged premises, and there was also a judgment for the sale of the premises to obtain payment of the sum found due on the note. On May 16, 1898, an execution upon the judgment was issued to the sheriff, (Burr,) and on June 13, 1898, he sold to the plaintiff in error, Hooker, the mortgaged premises for the sum of $9,500, who thereupon paid the amount of his bid to Burr, and Burr then gave a certificate of sale to the plaintiff as the purchaser. Plaintiff alleges that he was

entitled to a deed from the sheriff of date December 13, 1898, that being six months after his purchase at the foreclosure sale. On December 12, 1898, Rhodes, one of the defendants, (who was a judgment creditor of Spencer, the mortgagor,) issued an execution on his judgment and assumed to redeem the land from the foreclosure sale by the payment of $10,070 to the sheriff, to be paid to the purchaser, the plaintiff in error, being the amount of the purchase price paid by the latter at the foreclosure sale, together with interest thereon at the rate of one per cent per month. The sum was received by the sheriff as the full amount due to the plaintiff in error on his bid, with interest. The plaintiff in error declined to accept the money, and now contends that the amount delivered to the sheriff for the redemption was not enough, and he also makes the claim that there was never any legal payment to the sheriff, even of the sum mentioned. The sheriff, after receiving the redemption money, executed a deed to the judgment creditor, Rhodes, and it is this deed which plaintiff seeks to have set aside.

At the time when the above mentioned mortgage was executed, on October 16, 1893, the law in California provided that a judgment debtor or redemptioner might redeem the property from the purchaser at the foreclosure sale, at any time within six months after the sale, on paying the purchaser the amount of his purchase money with interest at two per cent a month thereon in addition up to the time of redemption. On March 27, 1895, the legislature altered this statute, which was section 702 of the Code of Civil Procedure, by providing that redemption might be made upon the payment of the amount of the purchase money with one per cent a month as interest thereon, and on February 26, 1897, the same section was again amended by the legislature by extending the time for redemption to twelve instead of six months, while keeping the rate of interest at one per cent per month on the amount of the purchase price paid at the sale.

It will be noticed that both these amendments had been

enacted and existed as the law in regard to redemptions at the time when the sale was made on June 13, 1898, upon the foreclosure of the mortgage.

*Mr. J. S. Chapman* for plaintiff in error.

*Mr. W. H. Anderson* and *Mr. E. C. Bower* for defendant in error.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The plaintiff in error contends that the several alterations of the law as it existed at the time when this mortgage was executed, regarding the time of redemption and the amount of interest payable to the purchaser at the foreclosure sale in order to redeem the land sold, impair the obligation of a contract as to all mortgages in existence before the alterations were made.

The first inquiry is, Whose contract was impaired by the alteration of the law? It is seen that the amount due on the mortgage in question at the time of the sale upon foreclosure was $6,782.49, and that the property sold for $9,500. That amount was paid by the purchaser to the sheriff and it resulted in the payment of the mortgage debt, principal and interest, and the release of the land from the lien of the mortgage. Subsequently to that payment the mortgagee had no interest in further proceedings. Neither the mortgagee nor his assignee was the purchaser at the sale, and neither was in any manner injured by the alterations of the law in the respects mentioned. If, therefore, there was by this legislation an impairment of the obligation of a contract between the mortgagor and the mortgagee, which the latter could have taken advantage of if injured thereby, it is perfectly clear that he is not in the least injured when, by the sale under his mortgage, he realizes the full amount of his debt, principal, interest and costs. What

can he complain of under such circumstances, even conceding an abstract impairment of the obligation of his contract? Having realized and been paid in full the entire amount of money called for by his mortgage, he surely cannot be heard to complain that nevertheless the obligation of his contract was impaired. If not injured to the extent of a penny thereby, his abstract rights are unimportant.

We have lately held (therein following a long line of authorities) that a party insisting upon the invalidity of a statute, as violating any constitutional provision, must show that he may be injured by the unconstitutional law before the courts will listen to his complaint. *Tyler* v. *Judges &c.*, 179 U. S. 405; *Turpin* v. *Lemon*, 187 U. S. 51, 60. If, instead of showing any injury, the plaintiff shows that he cannot possibly be injured, he cannot of course ask the interference of the court. Therefore, if the mortgagee, or his assignee, were himself the plaintiff, and complaining that the obligation of his contract had been impaired by subsequent legislation, it is plain his complaint would be dismissed when it appeared that, notwithstanding the alleged subsequent illegal legislation, he suffered no injury, because he had proceeded with the foreclosure of his mortgage and had been paid the full amount of his contract debt, interest and costs. Under such circumstances the question becomes a moot one, and courts do not sit to decide that character of question. *American Book Company* v. *Kansas*, 193 U. S. 49; *Jones* v. *Montague*, *ante*, p. 147, decided April 25, 1904.

The question of the impairment of the mortgage contract, therefore, is not before us, as between mortgagor and mortgagee.

We are of opinion that, as to the plaintiff in error, an independent purchaser at the foreclosure sale, having no connection whatever with the original contract between the mortgagor and mortgagee, his rights are to be determined by the law as it existed at the time he became a purchaser, unless upon action taken by the mortgagee the property had been sold

under a decree providing that it should be sold without regard to the subsequent legislation which impaired his contract. The purchaser bought at the time when the law as altered was in operation, and, so far as he was concerned, it was a valid law; his contract was made under that law, and it is no business of his whether the original contract between the mortgagor and mortgagee was impaired or not by the subsequent legislation. He cannot be heard to contend that the original law applies to him, because a subsequent statute might be void as to some one else. The some one else might waive its illegality or consent to its enforcement, or the question might have no importance, because the property sold for enough to pay the debt, even though there was an abstract impairment of the obligation of his contract.

The purchaser must found his rights upon the law as it existed when he purchased. An alteration after he had purchased, to his prejudice, would be a different thing. Cooley on Const. Limitations (4th ed.), 356. We agree that the law existing when a mortgage is made enters into and becomes a part of the contract, but that contract has nothing to do, so far as this question is concerned, with the contract of a purchaser at a foreclosure sale having no other connection with the mortgage than that of a purchaser at such sale. His rights regarding matters of redemption are to be determined as we have stated.

It has been so decided in the case of *Connecticut Mutual Life Insurance Co.* v. *Cushman,* 108 U. S. 51. There the property was sold at foreclosure sale for enough to pay the mortgage debt (page 56), and the reduction of the rate of interest which was payable to the purchaser at the foreclosure sale, upon a redemption, (which reduction was made by the legislature prior to the sale, although subsequently to the mortgage,) was held valid. The company, as purchaser at the foreclosure sale, bid enough to pay the principal and interest of its debt, and after the purchase it contended that the attempted redemption was insufficient because the interest upon the amount it

had bid upon the sale had been computed at eight per cent, the rate of interest allowed by law at the time of the sale, instead of ten per cent, the rate existing at the time of the execution of the mortgage. It was held that as to the purchaser the rate existing at the time of the sale was the legal rate and the redemption at that rate was valid. The principle of that case decides the one at bar.

It is asserted, however, on the part of the plaintiff in error that *Barnitz* v. *Beverly*, 163 U. S. 118, has in effect overruled the former case, and that upon the principle decided in the *Barnitz* case the plaintiff in error herein is entitled to a reversal of the judgment. We are not of that opinion.

In the first place, it was distinctly stated in *Barnitz* v. *Beverly* that it was not inconsistent with and did not overrule the former case, and its facts show a clear distinction between the two cases. The sum bid at the foreclosure sale did not pay the amount due on the mortgage, and the whole case shows that, although the mortgagee became purchaser, the debt of the mortgagor was not thereby paid, and it was the mortgagee's rights under her contract, as contained in the mortgage, and not her rights as a purchaser at the foreclosure sale, that were in controversy.

In the *Cushman* case, on the contrary, the amount bid at the foreclosure sale paid the mortgage debt, and the subsequent position of the mortgagee was as a purchaser only. The *Barnitz* case was decided distinctly upon the ground that, by the subsequent legislation, there was an impairment of the obligation of the contract between the mortgagor and the mortgagee, and it was her rights as mortgagee that were passed upon and recognized by the court. This is plain from a perusal of the opinion, especially at pages 130 and 131.

Attention is also called by plaintiff in error to a portion of the opinion in which it is stated that, "Without pursuing the subject further, we hold that a statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which

extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage." And it is asserted that such a case is now before the court.

These remarks must be interpreted in the light of the facts of that case and must be limited in their application to the parties to the mortgage contract whose rights are impaired by subsequent legislation. If the mortgage had been foreclosed and the mortgagee had thereby realized his debt, principal and interest in full, upon the sale, there can be no doubt that he would not have been heard to assert the invalidity of the subsequent legislation, nor would an independent purchaser at the sale have been heard to make the same complaint. Of course, this does not include the case of a mortgagee who purchases at the foreclosure sale and bids a price sufficient to pay his mortgage debt in full with interest, and an action thereafter commenced against him to set aside the sale because it was made in violation of legislation subsequent to the mortgage. In such case we suppose there can be no doubt of the right of the mortgagee to assert, as a defence to the action, the unconstitutionality of the subsequent legislation as an impairment of his contract contained in the mortgage. But it may be said that where the legal or equitable rights of a party are not in any way touched and he is in no way injured, he cannot be heard to complain of the impairment of the obligation of his contract, as a mere abstract proposition.

Many of the earlier cases declare the invalidity of subsequent laws in regard to redemption of land sold under execution, which altered the law existing when a mortgage was made, and some of them, it would seem, have declared the laws unconstitutional, even at the suit of a purchaser at the sale. The leading case on the subject of redemption decides nothing as to the rights of a purchaser. It is that of *Bronson* v. *Kinzie*, 1 How. 311. In that case the subsequent legislation, which was held to be invalid, gave twelve months after sale in which to redeem, and provided that the property should not be sold

under the foreclosure decree unless two-thirds of the amount which had previously been established by appraisers as the value of the property should be bid at the sale. The case came before the court upon a division of opinion. Bronson, the mortgagee, filed his bill to foreclose the mortgage, and asked for a decree that the mortgaged premises should be sold to the highest bidder without being subject to the rule established by the subsequent legislation. The motion was resisted on the part of defendants, who moved that the decree should direct the sale according to the subsequent legislation, and the judges were opposed in opinion as to the sale of the premises without regard to the subsequent law. This court held that the subsequent law was plainly one which impaired the obligation of the contract between the mortgagor and the mortgagee, and at the request of the mortgagee and to prevent the impairment of the obligation of his contract the court decreed that the sale should be made without reference to the law passed subsequently to the time of the execution of the mortgage contract.

*McCracken* v. *Hayward*, 2 How. 608, arose in the same way and was decided substantially upon the authority of the last case. The mortgagee made the same request, that the marshal should sell the property without regard to the statute of Illinois passed subsequently to the execution of the mortgage, and it was held that his motion should be granted, because the subsequent legislation impaired his contract as mortgagee with the mortgagor.

In *Gantley* v. *Ewing*, 3 How. 707, after the mortgage had been executed, the legislature passed an act which required on sales upon execution issued upon a judgment, that the property should first be appraised and should not thereafter be sold on execution for a sum less than one-half the appraised value. The mortgagee foreclosed the mortgage, and upon the sale the premises were sold to the defendants for $76, not a tenth part of the mortgage debt. The property had not been valued prior to the sale, as required by the statute. An act

had, however, been passed prior to the execution of the mortgage requiring the sheriff on such sales to first offer the rents and profits of the real estate for a term of seven years, and if the same did not bring enough to satisfy the execution, then the fee simple was to be offered for sale and sold. This offer to sell the rents and profits was not in fact made. There were two questions upon which the judges were opposed, the one as to the effect of the failure to make the offer to sell the rents and profits, and the other regarding the effect of the failure to make the appraisal. A certificate of division of opinion was sent to this court. The action was, as stated in the opinion, one of ejectment, the defendants setting up and claiming under the sheriff's deed, and the plaintiff, the mortgagee, asking the court to instruct the jury that the deed was void because the rents and profits had not been offered for sale before the fee simple was sold, and also because the land had not been valued as required by the statute before the sale was made. The mortgagee was thus the party claiming that the sale under his own foreclosure was void because of the failure to comply with the subsequent legislation of Indiana, while the defendants who bid at the sale and became the purchasers of the land insisted that the act (existing when they purchased) was unconstitutional, because it altered the law as it existed when the mortgage was made, and required that the land should not be sold until it had been appraised, and then only after at least one-half of the value so appraised had been bid. This court held that the offer to sell the rents and profits for seven years, as provided for by the statute existing prior to the execution of the mortgage, should have been made, and that the sale, such offer not having been made, was void; but it held that the condition provided for in the later statute of not selling unless the appraisal had taken place, and more than one-half such appraised value had thereafter been bid, was void as an impairment of the obligation of the contract between the mortgagor and the mortgagee, and the deed of the sheriff could not, so far as that ground was concerned, be avoided,

although no valuation of the property was made before the sale. The case was decided, as the opinion shows, entirely upon the authority of *Bronson* v. *Kinzie, supra,* which, as we have seen, was not a case of a purchaser and was decided upon the prayer of the mortgagee, who contended that his contract contained in his mortgage would be impaired by the subsequent law if the court should permit it to be enforced.

The question again arose in *Howard* v. *Bugbee,* 24 How. 461, and that case was also decided upon the authority of *Bronson* v. *Kinzie, supra.* In the statement of facts, by Mr. Justice Nelson, it appears that the mortgage by Parsons to Tait was executed in 1836, and in a subsequent year (1842) the law regarding redemption was altered, and a right was given to a judgment creditor to redeem for two years after a sale under a mortgage. The mortgage was foreclosed in 1848, and Howard, the appellant, became the purchaser of the premises at the sale under the decree of foreclosure, and obtained a deed of the same duly executed by the proper officer. Bugbee, the appellee, the plaintiff in the court below, recovered judgment against the estate of the mortgagor in 1843, and thereafter, pursuant to the altered law, tendered the purchase money, interest and charges to Howard, the purchaser, and asked for a deed of the land, which was refused. A bill was filed in the court of chancery in Alabama by Bugbee to compel Howard to receive the money in redemption of the sale and execute a deed. The defence was that the mortgage from Parsons, under which the defendant derived title as purchaser at the fore-closure sale, having been executed before the passage of the act providing for the redemption, the act, as respects this debt, was inoperative and void as impairing the obligation of a con-tract. Now here was a case where the purchase was made at the foreclosure sale six years after the law had been enacted providing for redemption, and the question was raised, not by the mortgagor or the mortgagee, but by the purchaser at the sale. The Alabama court of chancery held that complainant was not entitled to the relief asked, and dismissed the bill, but

the Supreme Court of that State upon appeal reversed the decree of the court of chancery and entered a decree for the complainant. Upon writ of error from this court it was here decided that the act of the legislature was invalid as an impairment of the mortgage contract, upon the authority of *Bronson* v. *Kinzie, supra,* which had never decided the particular question.

Upon principle, we cannot see how an independent purchaser, having no connection whatever with the mortgage, excepting as he becomes such purchaser at the foreclosure sale, can raise the question in his own behalf in relation to the validity of legislation as to redemption and rate of interest which existed at the time he made his purchase, and this question, we think, has been clearly determined against the purchaser in the case of *Insurance Company* v. *Cushman, supra.*

We have no disposition to revise the decision in that case, which, we think, was correct and stands upon a firm foundation. The later case of *Barnitz* v. *Beverly, supra,* when the facts therein are regarded, does not militate against the soundness of the views expressed in the *Cushman* case, and in addition to that it was distinctly so stated in the opinion of the court. If a sale be made under a decree directing that it be without regard to the subsequent legislation, as in *Bronson* v. *Kinzie, supra,* then the purchaser, buying under the decree with those specific directions, takes his rights thereunder. But in that case the decree is obtained in the interest and at the request of the mortgagee, and to save the impairment of his contract.

In our view this independent purchaser must, under the facts herein, abide by the law as it stood at the time of his purchase.

A further question is made by plaintiff in error, that there was no proper tender made.

Holding the views we do in regard to the main question, it follows that the amount of the bid made by the purchaser carried interest at the rate of one per cent per month only. If that amount at that rate of interest was tendered the sheriff,

it was sufficient. The state court has found that such amount was paid to the sheriff by a check which was subsequently paid. Whether the defendant Rhodes fully complied with the requirements of the state statute in order to make a complete tender, is not a Federal question.

The judgment of the Supreme Court of California is

*Affirmed.*